FILED

SEP 19 2017

CLERK U.S. DISTRICT COURT
WEST. DIST. OF PENNSYLVANIA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,

Plaintiff,

v.   Case No. 1:02-CR-0091-GD-4

JEFFREY HICKS,

Defendant.

### MOTION TO TERMINATE DEFENDANT'S SUPERVISED RELEASE TERM

NOW COMES the Defendant JEFFREY HICKS, appearing *pro se*, and respectfully motions the Court to terminate the imposed term of supervised release pursuant to 18 U.S.C. §3583(e)(1) and Fed R. Crim. P. 32.1(c)(2)(C). No hearing is sought in this matter per Fed R. Crim. P. 32.1(c)(2)(B).

1. This court sentenced me on March 19, 2002 to a term of 151 months of imprisonment followed by 5 years of supervised release. (CR 141).[1] This sentence came after I was found guilty by a jury on one count of Conspiracy to Distribute and Possess with Intent to Distribute 5Kg or More of Cocaine.[2] The same jury acquitted me of charge #2 of the indictment against me: Use of a Firearm in Furtherance of a Drug Trafficking Crime.[3] My term of supervision began on December 19, 2012.

---

1  "CR" followed by a number references the PACER docket entry number in this Court's record.

2  In violation of Title 21 U.S.C. §846.

3  18 U.S.C. §924(c)(1)(A)(i)

## Statutory Authority, General Precedent, and Policy

2. 18 U.S.C. § 3583(e)(1) states that, after considering several factors expressed in 18 U.S.C. § 3553(a),[4] the Court may terminate a term of supervised release and discharge the defendant after serving one year of supervision if it is warranted by the conduct of the defendant and it is in the "interest of justice".[5]

3. "The Supreme Court has described supervised release as "the decompression stage" between prison and full release." *United States v. Kappes, Crisp, and Jurgens, Nos. 14-1223, et seq.* (7th Cir. 2015) (Quoting *Johnson v. United States*, 529 U.S. 694, 709 (2000)). As will be seen below, this decompression stage, and the further need for supervision, no longer applies in my case.

4. Districts in the 3rd Circuit, as has the Circuit Court itself have relied on the "significantly changed or extraordinary circumstances," standard from *United States v. Lussier,* 104 F.3d 32 (2nd Cir. 1997). See *United States v. Smith,* 445 F.3d at 717 (3rd Cir. 2006). The United States Sentence Commission policy changes in 2011, discussed below, show a shift away from the "extraordinary" standard, overtly recommending early termination in appropriate cases where rehabilitation has been accomplished and recidivism reduced. Rehabilitation and recidivism reduction have both occurred in my case, as will be shown here.

5. "The standards adopted by the Judicial Conference Committee on Criminal Law in March 2003 elaborate on the statutory criteria and recommend evaluation of nine specific factors when deciding whether to approve early termination of supervised release." *United States v. Weintraub*, 371 F.Supp.2nd 164, 166. (D. Conn. 2005)[6]

---

4 Specifically, the Court is to consider (a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7).

5 Title 18 U.S.C.A. §3583(e)(1)

6 From Probation Monograph 109, *Supervision of Federal Offenders*

6. Further, and fundamental to this pleading, the 2011 amendments to the USSC Guidelines Manual adds commentary to §5D1.2 which specifically encourages courts to consider early termination of supervised release in "appropriate cases." The only example of an appropriate case given by the Commission in note 5 of §5D1.2 is a former addict that completes substance abuse treatment successfully, as I have done, thereby reducing his likelihood of recidivism to the community. This policy effectively nullifies the oft-used "exceptional conduct" and "changed circumstances" standard set by the *Lussier* Court in the 2nd Circuit, 19 years ago. See *U.S. v. Lussier*, 104 F.ed 32 (2nd Cir 1997).

**Tolling**

7. I have thus far served over **56** months on supervision, with less than **3** months remaining. My conduct since release personifies change, cooperation, and absolute compliance. All of the factors this Court must consider under §3553(a) when deciding to terminate a term of supervised release early, in addition to those it may consider, *id.*, weigh in favor of early termination in my case. These factors are discussed below.

8. I was sentenced to 151 months of imprisonment after the jury found me guilty on count one. That sentence was enhanced from acquitted conduct on count 2, Use of a Firearm on November 30, 2001 (CR 106). This sentencing enhancement came after *Apprendi*,[7] but before *Booker*,[8] *Blakely*,[9] *Alleyne* and their progeny.[10] After the promulgation of the later cases here, I filed a motion for re-sentencing under

---

7  *Aprendi v. New Jersey*, 530 U.S. 466 (2000). Held: The Constitution requires that any fact that increases the penalty for a crime beyond the prescribed statutory maximum, other than the fact of a prior conviction, must be submitted to a jury and proved beyond a reasonable doubt.

8  *United States v. Booker*, 543 U.S. 220 (2005).

18 U.S.C. §3742(a)(1) (CR 164) and my counsel filed a motion for *Writ of Habeas Corpus* under 28 U.S.C. §2255 (case no. 06-CV-1125). Both of these remedies were unavailable to me because I was time barred under statute to file them.

9. Policy regarding drug sentences under the Sentencing Commissions Drug Quantity Table (in section U.S.S.G. §2D1.1) has shifted lower on three separate occasions since 2007. Each time, the drug quantity table has lowered the base offense levels of drug crimes. Most recently this has affected many different drug types with the 2014 amendments to this section of the guidelines manual. Though a lower sentence of incarceration cannot compel the Court to reduce a sentence of supervised release, it should take such under consideration. See *United States v. Boston*, 08-10341 (5th Cir. 2011).

10. The commentary to the Sentencing Guidelines section upon which *Boston* relies refers to the possibility of a reduction in supervised release when a former prisoner has filed a Section 3583 motion. [U.S.S.G. §1B1.10 cmt. n.4(B)] ... The commentary states that even though a district court may not reduce a sentence below time already served in response to a Section 3582 motion, the court may take the fact that 'a defendant may have served a longer term of imprisonment than the court determines would have been appropriate in view of the amended guidelines range' into account when considering 'any motion for early termination of a term of supervised release'...".*Id at 3-4.*

11. I make no substantive argument here on what a resentencing decision would look like in light of the 6th Amendment cases that came after my initial sentencing, or

---

9 *Blakely v. Washington* 542 U.S. 296. Held: Because the facts supporting petitioner's exceptional sentence were neither admitted by petitioner nor found by a jury, the sentence violated his Sixth Amendment right to trial by jury.

10 *Alleyne v. United States* 570 U.S.____ (2013), *(11-9335)*

the reduced base-offense level I would be subject to today. However, in light of the relief I am requesting here, I point to the fact that I likely served much more time incarcerated that I would have today, and that, per *Boston, id.*, should be considered in light of a request to reduce a term of supervision.

### §§3553 Factors

12. I have now served 95% of my term of supervision and I have paid my $100 special assessment in full. I was not fined nor was I required to pay a judgment of restitution. I have no needs, educational, medical, or otherwise which could be facilitated from further supervision.[11] Since my release, I have received no infractions or violations of supervision and have complied with every condition thereof. I have cooperated fully from day one with the Bureau of Prisons and the USPO.

13. Additionally, I pose a very low likelihood to commit future crimes. Data accumulated from other federal criminal cases indicates that I pose a very low risk of recidivism. First, due to my initial criminal-history points, I have a low likelihood of recidivism. Publications available on the Sentencing Commission's website reveal that, even beyond criminal history category, criminal-history points are an excellent indicator of the risk of recidivism. Studies conducted in 2004 by the Sentencing Commission conclude, specifically, "[a]ll offenders with zero criminal history points have a primary recidivism rate of 11.7 percent. The zero-point offender rate is substantially lower than the recidivism rates for offenders with only one criminal history point (22.6%), or for offenders with two or more points (36.5%) combined in Criminal History Category II through Criminal History Category VI."[12] My zero criminal history points places me at the lowest range of recidivism risk of the entire cohort of federal offenders based upon

---

[11] Satisfying §3553(a)(2)(d)

criminal history.

14. Second, the effect of early termination, as requested in this motion, reduces my likelihood to recidivate. A recent recidivism study by the AOUSC-OPPS examined a cohort of offenders whose supervision terms expired or were terminated early in fiscal year 2005. The study found that during the 36-month follow-up period, "offenders granted early termination do not pose a greater safety risk to the community" than offenders who successfully served the entire supervised release term imposed by the sentencing court. "In fact, early-term offenders in this study presented a lower risk of recidivism than their full-term counterparts. Not only were early-term offenders charged with a new criminal offense at a lower rate than full-term offenders, they were charged with proportionally fewer felonies…" [13] [14]

15. I ask for and expect no sympathy from this Court for the punishment I received for my actions. I simply point to the years with which I have now paid for my crime, and ask the court to grant me the ability to move on from supervision.

### Policy Considerations from The Judicial Conference Committee

16. Without enumerating all nine consideration factors set forth by the committee, I'll make a short list here. I have not been arrested or committed any violations of

---

12 *Recidivism and the "First Offender,"* A Component of the Fifteen Year Report on the U.S. Sentencing Commission's Legislative Mandate (May 2004) at 13-14 (available at HTTP://www.ussc.gov/publicat/Recidivism_FirstOffender.pdf)

13 See James L. Johnson, *Are Early Terminated Offenders a Greater Risk to the Community*, NEWS & VIEWS, Vol. XXXV, No. 2, at 1 (Jan 18, 2010)(Published by AOUSC-OPPS)

14 Paragraphs 13-14 satisfy §3553(a)(2)(B)-(D). It's of note that §3583(e)(1) does not set forth §3553(a)(2)(A) as a factor to be considered in requests such as this, as Supervised Release is not considered a part of the "punishment" for my criminal behavior, but for affording adequate protection from the public from me, which is no longer relevant.

supervision since release. Nor have I had any psychiatric episodes. I completed a 40 hour drug abuse program inside the Bureau of Prison, and have remained clean and sober ever since. I have passed all urinalysis tests since my supervision began without failure. This itself places me in the category specifically outlined by the Sentencing Commission in note 5 of §5D1.2, identifying me as an appropriate case for early termination of supervision.

17. I have a very strong support structure which encourages my law-abiding life. My fiance, Nikia Anthony, supports me each day. My four children, London, Zyrae Thorton, Jeffrey Jr., and Agustus remind me every day why I maintain sobriety and lead a law-abiding life.

18. I have maintained employment steadily since beginning supervision. After attaining my Commercial Driver's License from Georgia Technical Piedmont College, I left Sonic restaurant to work for Greasers Tanker Truck Co., then moved to Dallas where I began substantial employment with PTL Trucking, Inc. as a driver. I now work for Top Notch Trucking while I save and prepare to buy my own truck and work as a long-haul owner-operator.

19. Finally, one of the most recent figures from the Administrative Office of the United States Courts estimates that it costs American taxpayers $328.20 per month per defendant for probationary supervision.[15] In my case, there are no benefits that could be achieved over the next 3 months to justify such an expense.

---

15 Administrative Office of The United States Courts report: Cost of incarceration and supervision FY 2010.

## CONCLUSION

Considering the cost of supervision, and based upon the reasons and factors discussed in this motion, I respectfully request that this Court terminate the remainder of my term of supervised release.

Respectfully submitted on this 14th day of September, 2017

/s/ Jeffrey Hicks
JEFFREY HICKS

*Pro Se* Defendant, Movant

CERTIFICATE OF SERVICE
FOR PRO SE DOCUMENTS

I, JEFFREY HICKS, do hereby certify that I have served a true and correct copy of the following document,

**MOTION TO TERMINATE DEFENDANT'S SUPERVISED RELEASE TERM**

upon the court and the office of the United States Attorney:

**Soo C. Song**
United States Attorney's Office
700 Grant Street
Suite 4000
Pittsburgh, PA 15219

**Clerk of the U.S. District Court**
Joseph F. Weis, Jr. Federal Courthouse
700 Grand St
Suite 3110
Pittsburgh, PA 15219

by placing it in a sealed, postage prepaid envelope by United States Postal Mail on the 14th day of September, 2017.

_____
JEFFREY HICKS
*Pro Se* Movant